664 P.2d 994

COACHLIGHT LAS CRUCES, LTD., Plaintiff-Appellee,

v.

MOUNTAIN BELL TELEPHONE COMPANY, Defendant-Appellant.

No. 5769.

Court of Appeals of New Mexico.

March 24, 1983.

Lloyd O. Bates, Jr., Pickett & Bates, Las Cruces, for plaintiff-appellee.

H. Perry Ryon, and Mary E. McDonald, Ronald J. Segel, Sutin, Thayer & Browne, P.C., Albuquerque, for defendant-appellant.

## OPINION

HENDLEY, Judge.

Defendant appeals an adverse judgment of compensatory damages based on ordinary negligence in not providing telephone service to plaintiff. The controlling issue is whether General Exchange Tariff § 20 G 5 is a bar to plaintiff's recovery.

We reverse.

Coachlight owns and operates a motel. Howard Jakobson, Valentine East Truck Brokers, and Claude Salicos, Alamosa Truck Brokers, had conducted their truck brokerage businesses from Coachlight each fall during the lettuce harvest for several years prior to 1980. The truck brokerage businesses required heavy telephone usage; Jakobson and Salicos did not believe they could receive adequate telephone service through the motel switchboard. Over the years Jakobson had reserved three telephone numbers in the Las Cruces area, Salicos reserved two. Mountain Bell does not charge for reserving a telephone number. Neither of the brokers reserved lines, which can be done by paying normal monthly charges.

In early September, 1980, Jakobson and Salicos contacted Mountain Bell to have telephone service connected at Coachlight. They were told that there were no available lines at that time in that area. One of them requested Mountain Bell to find out where they could get service. The Rodeway was one of two or three motels in which they could be supplied with adequate service.

The brokers ran their businesses that year from the Rodeway. As a result of this move, many of the truck drivers they dealt with also stayed at the Rodeway. Coachlight's claim was based on loss of business caused by the brokers being located at the Rodeway instead of at Coachlight.

The trial court made the following findings of fact:

4. That the defendant had a statutory and legal obligation to provide telephone lines and telephone service to citizens and businesses in and around Dona Ana County, New Mexico, including providing lines and service to Coachlight.

5. That defendant knew of the nature of the Coachlight business in that truck brokers seasonally and annually rented rooms at the Coachlight Inn and seasonally and annually required extensive telephone service for their businesses.

\* \* \* \* \* \*

13. That defendant knew the brokers' course of conduct and that the brokers would need telephone service during the harvest season of 1980.

14. That defendant knew at least six (6) months in advance of the 1980 harvest season that defendant was not capable of furnishing the service required, but that defendant did not make any attempt to improve its facilities to adequately serve the public at the Coachlight Inn and surrounding area.

15. During the year from November of 1979 through October of 1980, seven of the cable pairs which had been available prior to that time were used by new subscribers and existing subscribers who expanded their telephone service.

16. That defendant was negligent in failing to improve its system so as to be able to furnish service.

17. That defendant was also negligent in that when the availability of service was brought to defendant's attention, defendant failed to make efforts to make service available by utilizing lines offered by Coachlight, again showing defendant's failure to furnish adequate public service.

18. In April of 1981, Mountain Bell began work on a project which was completed in October of 1981 and which alleviated problems with the feeder cable serving the Coachlight Inn. The work was done at a reasonable cost and should have been performed by defendant in time to make service available to the brokers in the fall of 1980.

19. From August 22, 1977 to the present time, there has been in effect a general exchange tariff which provides as follows * * *. [§ 20 I 1]

20. There has been in effect since February 7, 1977 to the present time a general exchange tariff which provides as follows * * *. [§ 20 G 5]

21. That defendant's tariff is not a defense or bar to plaintiff's claim herein.

* * * * * *

*The Court's Conclusions of Law*

1. Mountain Bell Telephone Company's general exchange tariff is not applicable as a defense or limitation of liability in this case, as the tariff cannot relieve defendant of its statutory duty to perform and furnish service to the public, pursuant to Section 63–9–7, N.M.S.A., (1978 Comp.).

2. The New Mexico Constitution, in granting authority to the Corporation Commission to regulate rates to defendant herein, does not include a grant of authority to the Corporation Commission to approve a utility's limitation of liability for failure of the utility to perform its statutory duties, which are unrelated to establishing rates.

3. Coachlight Inn is an entity entitled to legal protection from Mountain Bell's negligence and the resulting damages incurred thereby.

The Mountain Bell Telephone General Exchange Tariff provisions, which are applicable to the instant case, are:

Section 20 G 5:

5. Apart from the credit allowance stated above, no liability shall attach to the Telephone Company for damages arising from errors, mistakes, omissions, interruptions, or delays of the Telephone Company, its agents, servants or employees, in the course of establishing, furnishing, rearranging, moving, terminating, or changing the service or facilities (including the obtaining or furnishing of information in respect thereof or with respect to the subscribers or users of the service or facilities) in the absence of gross negligence or willful misconduct.

Section 20 I 1:

1. The Telephone Company's obligation to furnish service or to continue to furnish service is dependent on its ability to obtain, retain and maintain suitable rights and facilities, without unreasonable expense, and to provide for the installation of those facilities required incident to the furnishing and maintenance of that service.

It is defendant's position that these provisions of the tariff are derived from the authority set forth in N.M. Const. art. XI, § 7, which states in part:

**Sec. 7. [Powers of corporation commission over carriers; duties of supreme court.]**

The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, telegraph, telephone, sleeping-car and other transportation and transmission companies and common carriers with the state and of determining any matters of public convenience and necessity relating to such facilities as expressed herein in the manner which has been or shall be provided by law; * * *. The commission shall have power to change or alter such rates, to change, alter or amend its orders, rules, regulations or determinations, and to enforce the same in the manner prescribed herein; provided, that in the matter of fixing rates of telephone and telegraph companies, due consideration shall be given to the earnings, investment and expenditure as a whole within the state. No general change in a rate, fare or charge shall be collected by any telephone or telegraph

company or common carrier until such proposed increase is approved by the commission or, in the event of removal, until such proposed increase is approved by the supreme court except as otherwise provided in this constitution. * * *

It is plaintiff's position that the Commission had no authority under the constitutional provision to approve the provision of the tariff which permits defendant to limit its liability to acts of gross negligence or willful misconduct. Plaintiff further contends that the question of adequate service is controlled by § 63–9–7, N.M.S.A.1978, and that the question of a negligent breach of duty to provide adequate service is for the finder of fact. Both parties agree that the trial court's finding of negligence, and not gross negligence, is supported by the evidence.

Section 63–9–7 states in part:

**Duty to exercise authority; discontinuance.**

A. Unless exercised within a period designated by the commission, exclusive of any delay due to the order of any court, authority conferred by a certificate of convenience and necessity issued by the commission shall be void. The beginning of the construction of a plant or system, in good faith, within the time prescribed by the commission and the prosecution of the same with reasonable diligence in proportion to the magnitude of the undertaking, shall constitute an exercise of the authority.

B. The holder of a certificate shall render continuous and adequate service to the public and shall not discontinue, reduce or impair service to a certificated area, or part of a certificated area, except ordinary discontinuance of service for nonpayment of charges, nonuse and similar reasons in the usual course of business, unless and until there shall first have been obtained from the commission a certificate that neither the present nor future public convenience and necessity will be adversely affected thereby; except that the commission may, upon appropriate request being made, authorize temporary or emergency discontinuance, reduction or impairment of service, without regard to the provisions of this section; provided, however, that nothing in this section shall be construed as requiring a certificate from the commission for any installation, replacement or other changes in plant, operation or equipment which will not impair the adequacy or quality of service provided.

With regard to plaintiff's argument concerning § 63–9–7, a reading of the whole article shows that this is the "Telephone and Telegraph Company Certification Act" which sets out guidelines to the Commission. The statute does not stand for the proposition that the defendant has to supply service in all situations. *See Garrison v. Pacific Northwest Bell,* 45 Or.App. 523, 608 P.2d 1206 (1980). The statute cannot be read so as to limit N.M. Const. art. XI, § 7.

Plaintiff relies on *Southwestern Pub. S. Co. v. Artesia Alfalfa Ass'n,* 67 N.M. 108, 353 P.2d 62 (1960), for the proposition that it is against the public policy of the state to allow a public utility to limit its liability for its negligence in performance of its duties to public service.

In *Artesia Alfalfa, supra,* an electric utility (Southwestern) brought suit against a customer for payment of services rendered. The customer answered and counterclaimed alleging that three electric motors had been damaged by the utility's negligently providing irregular service. One of the arguments Southwestern relied on was a rule approved by the Public Service Company which provided that Southwestern was not "liable to customer for any damages occasioned by irregularities or interruptions." The court refused to allow the limitation of liabilities defense stating: "The Public Service Commission cannot absolve appellant for its negligence. * * * [W]e cannot see how appellant can escape liability for its negligence by any rules filed with the Public Service Commission."

Defendant contends that there is a significant difference between *Artesia Alfalfa, supra,* and the present case. Its contention is based on the fact that in *Artesia Alfalfa,*

*supra,* the rule was approved by a statutorily created body, the Public Service Commission, whose authority was delegated by the Legislature; whereas, in the present case, we are dealing with a tariff adopted by the Corporation Commission whose rate-making authority is legislative in nature and constitutionally derived.

■ Defendant asserts this difference is vital to understanding the inapplicability of the *Artesia Alfalfa, supra,* reasoning to the present case. We agree. In the present case, we are dealing with a tariff provision adopted by the Corporation Commission, whose authority is constitutionally derived. The Commission's rate-making authority is plenary. *Mountain States Tel. v. New Mexico State Corp.,* 90 N.M. 325, 563 P.2d 588 (1977). Therefore, the statute cannot take precedence. There is no conflict between the statute and the tariff. The statute should not be read to require the telephone company to provide service anywhere, anytime, to anybody, and under all circumstances.

Tariffs similar to § 20 G 5 have been upheld as valid limitations of liability in many jurisdictions as valid exercise of the rate-making authority.

In *Western Un. Tel. Co. v. Esteve Bros. & Co.,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed.2d 1094 (1921), the court was dealing with a situation that involved a tariff, filed by the telegraph company with the Interstate Commerce Commission pursuant to the Interstate Commerce Act, which limited its liability from mistakes on unrepeated messages to the amount accruing to the company. On repeated messages, the liability was limited to fifty times the amount accruing to the company. In that case, the court established the principle that a regulatory body setting rates and regulating utilities had inherent power and authority to determine the relative rights between a utility and its customers. The court stated: "The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the services rendered."

This reasoning has been used in other jurisdictions to support the validity of liability limiting tariffs. The court in *Pilot Industries v. Southern Bell Tel. & Tel. Co.,* 495 F.Supp. 356 (1979), stated:

This Court is of the opinion that the tariff adopted by the South Carolina Public Service Commission and the Federal Communications Commission is reasonable and controlling. A number of other jurisdictions have recognized the same limitations in tariffs. The limitation exists as an integral part of the rate-making function, a function that is totally regulated by state and federal agencies. The tariff has been recognized as a reasonable limitation of liability by the agencies exclusively empowered by the state and federal governments to make this determination.

*State ex rel. Mt. States T. & T. Co. v. District Court,* 160 Mont. 443, 503 P.2d 526 (1972), involved the Public Service Commission's authority to act in the field of limitation of liability of the utility (telephone company) with regard to directory omissions and errors. The court held that the Commission did have authority to limit liability in that area. In so holding, the court stated:

[T]he telephone company's exposure to liability is one factor which determines the rates the company is permitted by the Public Service Commission to charge. If the company must litigate every case of error in, or omission of a listing, the telephone rates must necessarily rise to reflect this increase in costs. All this is in the area of its public service, properly regulated by the Public Service Commission.

\* \* \* \* \* \*

This places the utility in a class of corporations strictly regulated in its rights and privileges and it therefore should be regulated, at least to the extent of its static known exposure to liabilities such as its directory omissions and errors when this function is required by the Commission, and at the very least indirectly involved in the rate and service considerations.

That case involved the Public Service Commission's authority to act in the field of limitation of liability of the utility (telephone company) with regard to directory omissions and errors. The court held that the Commission did have authority to limit liability in that area.

*Southern Bell Tel. & Tel. Co. v. Ivenchek, Inc.,* 130 Ga.App. 798, 204 S.E.2d 457 (1974), involved a tariff limiting liability of the telephone company where damages were sought for the telephone company's negligence in curtailing service. There, the Public Service Commission had a constitutional grant of authority to set rates, much like our Corporation Commission. The court held that the Commission did have authority to limit liability and, that to the extent interruption of service, delays, and disconnections were results of willful misconduct by the telephone company, the tariff had no application. The court stated:

As we have seen * * * and since the fixing of utility rates is no longer a matter of private contract, but is charged with a public interest, and it is to the public interest to have uninterrupted service at a reasonable price, it necessarily follows that a reasonable limitation of liability for damages for interrupted telephone service may be considered as a part of the telephone ratemaking function.

The Corporation Commission's constitutional rate-making authority under N.M. Const. art. XI, § 7, is quite broad. In *Mountain States Tel. v. New Mexico State Corp., supra,* our Supreme Court stated:

It is difficult to conceive of a more clear and all-inclusive grant of power to a governmental agency. The Commission has a duty to be a prime mover in the procedure to see that the public interest is protected by establishing reasonable rates and that the utility is fairly treated so as to avoid confiscation of its property....

*  *  *  *  *  *

The authority granted to the Commission is so broad that little room is left for construction. In *San Juan C. & C. Company v. S.F.S.J. & N. Ry. Co.,* 35 N.M. 512, 516–517, 2 P.2d 305, 307 (1931) this court discussed the extent of the Commission's authority:

If the commission were a creature of the Legislature, we should construe its powers with some strictness. Such powers as the Legislature had not conferred or delegated, it would be deemed to have reserved. Even so, the language of the grant is here so all-inclusive that good reason for limiting it has not occurred to us.

But this is not a legislative grant. It is a delegation of power and duty by the Constitution. *The power to fix rates is an attribute of sovereignty.* The people, in framing their fundamental law, considered where they would place it. It is legislative in its nature, and, if the people had not spoken, rate making would have devolved upon the Legislature as one of its natural and inherent concerns. But they did speak. *It is clear to us that they intended the corporation commission to have all the power and the Legislature to have none of it.* * * * (Emphasis added.)

*We consider the rate-making power of the commission to be plenary,* except as restricted by those principles of constitutional law which would have limited its exercise if it had been intrusted to the Legislature.

Accordingly, we hold that the tariff provisions are within the constitutional grant of authority of the Corporation Commission. They are a valid defense to Coachlight's claim since it is conceded that the trial court's finding of ordinary negligence is supported by the evidence.

Plaintiff asserts that to interpret the rate-making authority to include authority to limit a utility's liability would result in too broad of a construction of the constitutional section. It claims that this would allow the Corporation Commission to abrogate the obligations imposed on Mountain Bell by law. "The lack of liability, in effect, gives Mountain Bell carte blanche in failing to comply with the statutes and law

of New Mexico." This argument is without merit. The tariff limitation of liability is not a total limitation of liability. The limitation of liability is reasonable since it applies only in the "absence of gross negligence or willful misconduct." *Garrison v. Pacific Northwest Bell, supra.*

The judgment in favor of plaintiff is reversed and the cause is remanded to the trial court with directions to enter judgment for the defendant. Defendant is awarded appellate costs.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.