**COMPUTER TOOL & ENGINEERING, INC., Respondent (C6–89–1472), Appellant (C1–89–1654),**

v.

**NORTHERN STATES POWER COMPANY, Respondent,**

**United Telephone Company of Minnesota, Appellant (C6–89–1472), Respondent (C1–89–1654).**

Nos. C6–89–1472, C1–89–1654.

Court of Appeals of Minnesota.

April 3, 1990.

Review Denied May 23, 1990.

Joseph F. Lulic, E. Curtis Roeder, Hanson, Noel & Lulic, Minneapolis, for Computer Tool & Engineering, Inc.

Samuel L. Hanson, Michael C. Krikava, Briggs & Morgan, Minneapolis, for Northern States Power Co.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, for United Telephone Co. of Minnesota.

Considered and decided by GARDEBRING, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

United Telephone Company of Minnesota (United Telephone) and Computer Tool & Engineering, Inc. (Computer Tool) appeal from the trial court's denial of their motions seeking post-trial relief in a case involving the interruption of electrical service. We affirm.

## FACTS

In September of 1986 United Telephone was engaged in the placement of underground telephone cables in a mobile home development in Dakota County. As part of its installation, United Telephone contacted Northern States Power Company (NSP), requesting NSP to locate those power lines lying beneath the work site. NSP sent a locater to the site on September 29, 1986 in response to United Telephone's request. After marking only two of the six lines, the locater told a United Telephone contractor that someone would return later in the week to finish locating the lines.

On September 30, 1986, United Telephone began installing its underground telephone lines, and, in the course of that installation, severed a primary feeder cable and a secondary cable of NSP. This caused a power surge to travel through the cable, damaging computer equipment owned by Computer Tool.

Computer Tool brought suit against both United Telephone and NSP to recover for the damaged computer equipment. United Telephone and NSP asserted cross-claims against one another.

At trial, Computer Tool presented evidence showing the computer's market value before the power surge. Computer Tool's owner and operator testified the market value of the computer before the power surge was between $40,000 to $42,000. He then testified the computer was sold after the power surge to Dimension Industries Machine Shop for $10,000.

Computer Tool also presented testimony regarding the reasonable cost of repairing the computer. That witness testified regarding two separate repair estimates; one for $6,664.68 and another for $31,116.38. United Telephone presented testimony from the purchaser of the computer, who testified the cost of repairing the computer totaled roughly $5,415.51. Testimony also showed Computer Tool had experienced power surge problems in the past. Computer Tool did not use surge protection equipment although it knew equipment existed to guard against such an occurrence.

After the presentation of evidence to the jury, the trial court granted NSP's motion for a directed verdict on liability and dismissed United Telephone's cross-claim for contribution. The directed verdict was based on NSP's rate tariff, which states:

1.4. Continuity of Service. The Company will endeavor to provide continuous service but does not guarantee an uninterrupted or undisturbed supply of electric service. The Company will not be responsible for any loss or damage resulting from the interruption or disturbance of service for any cause other than gross negligence of the Company. The Company will not be liable for any loss of profits or other consequential damages resulting from the use of service or any interruption or disturbance of service.

The case was submitted to the jury on Computer Tool's claim against United Telephone. The jury apportioned 85 percent of the fault to United Telephone and 15 percent of the fault to Computer Tool. The jury assessed damages at $31,000.00, which resulted in an award to Computer Tool of $26,350.00. The trial court denied United Telephone's motions for judgment notwithstanding the verdict and for a new trial.

## ISSUES

I. Did the trial court err in applying the rate tariff?

II. Did the trial court err in submitting the issue of comparative negligence to the jury?

III. Did the trial court err in granting a directed verdict for NSP?

IV. Did the trial court err in refusing to reduce the award of damages?

## ◊ ANALYSIS

### I.

Appellants claim the rate tariff is contrary to statutory authority, contravenes public policy, and is inapplicable to the facts of the present case. We disagree.

 The courts have long recognized a relationship exists between limiting the liability of public utilities and serving the public interest with low utility rates. *See Western Union Telegraph Co. v. Esteve Brothers & Co.*, 256 U.S. 566, 569, 41 S.Ct. 584, 585, 65 L.Ed. 1094 (1921). Liability limitations contained in the rate tariff of a public utility are binding on rate payers regardless of knowledge or assent because the rate, which includes the limitation of liability, is the only lawfully established rate. *Komatz Construction, Inc. v. Western Union Telegraph Co.*, 290 Minn. 129, 137, 186 N.W.2d 691, 696 (1971), *cert. denied*, 404 U.S. 856, 92 S.Ct. 102, 30 L.Ed.2d 98 (1971). A limitation of liability is an essential and valid part of the rate charged for a public utility's service. *Landrum v. Florida Power & Light Co.*, 505 So.2d 552, 554 (Fla.Dist.Ct.App.1987), *rev. denied* 513 So.2d 1061 (Fla.1987); *Lee v. Consolidated Edison Co.*, 98 Misc.2d 304, 305, 413 N.Y. S.2d 826, 838 (N.Y.Sup.Ct.1978).

 The legislature has delegated authority to regulate public utilities and to determine the reasonableness of the rates they charge to the Minnesota Public Utilities Commission. *See* Minn.Stat. ch. 216B (1988 & Supp.1989). This grant of authority provides the commission with broad regulatory power, the extent of which is measured by the enabling statute. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984). We must construe this legislative grant of exclusive control over rates in light of the purpose for which the grant was made. *State ex rel. Waste Management Board v. Bruesehoff*, 343 N.W.2d 292, 295 (Minn.Ct.App.1984).

■ Rate-making is a quasi-legislative function, *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 369 N.W.2d 530, 533 (Minn.1985), and decisions of the commission "command the same regard and are subject to the same tests as enactments of the legislature." *Minneapolis Street Railway Co. v. City of Minneapolis,* 251 Minn. 43, 71, 86 N.W.2d 657, 676 (1957). The term "rate" is defined by statute to include all tariffs, rules, practices and contracts affecting the rate charged. Minn.Stat. § 216B.02, subd. 5. Rates fixed by the commission are presumed to be reasonable and just until the contrary is shown by clear and convincing evidence. *Northwestern Bell Telephone Co. v. State,* 299 Minn. 1, 28, 216 N.W.2d 841, 857 (1974).

■ The tariff at issue here was originally filed with the commission in 1974. It has remained a part of NSP's General Rules and Regulations since that time despite several contested rate changes. It has therefore been recognized as a reasonable limitation of liability by the agency exclusively empowered by the legislature to make this determination. While the statute contains no express provision allowing the commission to limit the liability of a public utility, the commission does have the responsibility of establishing reasonable rates to be charged by public utilities. Approving a liability limitation falls within the ambit of the commission's broad regulatory power. Minn.Stat. § 216B.16. The commission is directed to balance the public need for adequate, efficient and reasonable service, on the one hand, against the need of the public utility for sufficient revenue to meet the cost of furnishing service and earn a reasonable profit. Minn.Stat. § 216B.16, subd. 6. Making these determinations and weighing the needs of the public against those of the public utility is a task suited for the commission because of its expertise in this specialized area. The commission could find the tariff reasonable where, absent the limitation, the broad liability exposure would invariably raise the costs and rates for electric service. *Lee,* 98 Misc.2d at 305, 413 N.Y.S.2d at 828.

■ Moreover, we do not find the limitation of liability violates public policy. By its own terms, the tariff does not purport to relieve NSP from all negligence under all conceivable circumstances. The tariff is narrow and applies to exonerate NSP from liability occasioned by interruptions or disturbances in the electric service. Liability would remain for all injury not caused by an interruption or disturbance in power. *See Zoller v. Niagara Mohawk Power Corp.,* 137 A.D.2d 947, 950, 525 N.Y.S.2d 364, 367 (N.Y.App.Div.1988). Furthermore, liability remains for gross negligence as well as willful or wanton acts of NSP. This is quite a different case from *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920 (Minn.1982), where the exculpatory clause called for complete exoneration from liability. While *Schlobohm* involved what was clearly an exculpatory clause, this case involves what is just as clearly a limitation of liability.

The tariff, embodying the limitation of liability, is an inherent part of the lawful rate charged to consumers, from which neither the utility nor the consumer may depart. Minn.Stat. § 216B.07. Narrowly construed, the limitation applies where an occurrence breaks the uniformity and continuity of electric service, which is exactly what happened here. Hence, the trial court did not err in applying the tariff to the facts of this case; neither did it err in holding the tariff valid and enforceable.

## II.

■ Computer Tool asserts the trial court erred in submitting the issue of negligence to the jury. Computer Tool maintains its own negligence should not have been submitted to the jury. We disagree.

■ Minnesota courts have held the jury must have an opportunity to consider the fault of all the parties to the transaction, whether or not they are parties to the lawsuit. *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 293 (Minn.1986); *Lines v. Ryan,* 272 N.W.2d 896, 902–03 (Minn.1978); *Steinbrecher v. McLeod Cooperative Power Association,* 392 N.W.2d 709, 715 (Minn. Ct.App.1986). Where there exists evidence

of conduct which, if believed by the jury, would constitute negligence or fault on that individual's part, the fault or negligence of that party should be submitted to the jury. *See Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn.1978). Under the comparative fault statute, the term "fault" includes acts or omissions that are in any measure negligent toward the property of the actor. Minn.Stat. § 604.01, subd. 1a (1988).

The evidence shows Computer Tool was aware a power surge could cause damage to its computer equipment and that low cost protective equipment was available which would have prevented the damage. Despite its apprehension of the potential harm posed by a power surge, Computer Tool did nothing to guard against this threat. Although one need not anticipate another's negligence until he becomes aware of such negligence, *Hanson v. Bailey*, 249 Minn. 495, 504–05, 83 N.W.2d 252, 260 (1957), it is not due care to depend upon the exercise of care by another when such dependence is itself accompanied by obvious danger. *Norton v. Nelson*, 236 Minn. 237, 243, 53 N.W.2d 31, 35 (1952). The obvious danger here was that a power surge, from whatever source, could result in damage to Computer Tool's equipment. While Computer Tool may not have been able to anticipate a negligent power surge, it was aware of prior irregularities in the power supply and, as the evidence indicates, could have taken precautions in light of this knowledge. Under these circumstances, the submission to the jury of Computer Tool's negligence was proper.

### III.

■ Appellants argue the trial court erred in directing a verdict for NSP and dismissing United Telephone's cross-claim. We disagree. In reviewing a trial court's order for directed verdict, this court makes an independent determination of the sufficiency of the evidence to present a fact question for the jury's resolution. *See Walton v. Jones*, 286 N.W.2d 710, 714 (Minn.1979). In doing so, we must accept as true all evidence in a light favorable to the nonmoving party and affirm the order

only "where (1) in light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case." *Reinhardt v. Colton*, 337 N.W.2d 88, 94 (Minn.1983) (quoting *J.N. Sullivan & Associates v. F.D. Chapman Construction Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)).

The trial court here ruled that the liability limitation contained in the rate tariff insulated NSP from liability for ordinary negligence. The tariff destroyed the common liability needed for a successful contribution claim. *See Jones v. Fisher*, 309 N.W.2d 726, 728 (Minn.1981); *see generally* Note, *Contribution and Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 5 Wm. Mitchell L.Rev. 109, 125–27 (1979). The rate tariff, raised by NSP as a personal defense going to the merits of the claim, negates liability and eliminates any common liability with United Telephone.

United Telephone's cross-claim is a derivative claim for contribution and indemnity based solely on the damages claimed against it by Computer Tool. Because the tariff insulates NSP from the claim by Computer Tool, it also insulates NSP from United Telephone's derivative cross-claim. The tariff would fail of its purpose if United Telephone were permitted to pursue its cross-claim in this case. We are not ruling that a defendant in United Telephone's position is prohibited from asserting any cross-claims against NSP. A non-derivative cross-claim based on, for example, injury to digging equipment or to personnel, may or may not be appropriate. We hold only that the derivative cross-claim is prohibited.

### IV.

■ United Telephone argues that the trial court erred in refusing to reduce the damages awarded. We disagree. On appeal, a trial court's decision regarding excessiveness of damages will not be disturbed absent a clear abuse of discretion,

where failure to correct the decision would be "shocking" and result in a "plain injustice." *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 695 (Minn.1980); *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 699 (Minn.Ct. App.1984). There are no fixed standards by which this determination is made; each case must be examined by itself. *DeRemer*, 353 N.W.2d at 699.

■ The proper measure of damage for harm to personal property not amounting to a total destruction, includes compensation for the difference in value before and after the harm or, at plaintiff's election, the reasonable cost of repair. *O'Connor v. Schwartz*, 304 Minn. 155, 158, 229 N.W.2d 511, 513 (1975). Because the plaintiff controls his action, the plaintiff is permitted to elect the measure of damages. *Id.*

■ United Telephone presented evidence that the new owner expended $5,415.51 in repairing the computer to working order. The evidence presented did not, however, show that the computer was restored to its pre-power surge value or condition. Further, the new owner also testified that the computer was not used as frequently or in the same capacity as Computer Tool had used it. This evidence only establishes the new owner was able to restore the computer to an operational capacity. Whether this capacity and value was the same as that which existed before the power surge is unknown. The jury was free to reject this testimony in setting its award of damages. Under these circumstances, we find no abuse of discretion by the trial court in refusing to reduce the award of damages.

## DECISION

The limitation of liability provision in NSP's rate tariff is valid, enforceable and applicable to the facts of this case. Computer Tool's negligence was properly submitted for consideration to the jury. United Telephone's derivative cross-claim is prohibited by the rate tariff. The trial court did not abuse its discretion in refusing to modify the award of damages.

Affirmed.