HOUSTON LIGHTING & POWER COMPANY, Petitioner,

v.

AUCHAN USA, INC., successor in interest to Texfield, Inc., d/b/a Auchan Hypermarket, Respondent.

No. 97–1052.

Supreme Court of Texas.

Argued Sept. 10, 1998.

Decided June 10, 1999.

---

Claudia Wilson, Bill Kroger, Jacalyn Ann Hollabaugh, Houston, for petitioner.

Larry L. Gollaher, J.E. Ted Turner, Dallas, for respondent.

Justice OWEN delivered the opinion of the Court.

In this case, we determine whether a tariff provision approved by the Public Utility Commission that limits liability for economic damages caused by a utility's negligence may be found unreasonable when applied to a particular outage. We conclude that the tariff at issue is effective to limit damages to necessary repairs and physical damages caused by the utility's negligence. Because the tariff provision is not unreasonable on its face, the trial court did not err in granting summary judgment for the utility on claims for economic damages beyond those set forth in the tariff. Accordingly, we reverse the court of appeals' judgment and render judgment for the utility.

**I**

Auchan USA, Inc. is a large retail grocer in the Houston area. When Auchan lost electrical power at one of its stores, it notified its provider, Houston Lighting & Power (HL & P), a publicly-held electrical utility, of the problem within twenty minutes. An HL & P service crew arrived approximately an hour later and informed Auchan that the service would be restored in four to six hours. The crew determined that the interruption of service was caused by a transformer failure. Service was not restored until approximately fifteen hours after the power outage. Auchan's refrigerator units were inoperative during that time, and the food contained in those units spoiled. Auchan suffered lost profits and disposal costs of $258,755.29. Auchan was insured against some of those losses by Travelers Insurance Company, which paid Auchan $227,497.69. Travelers brought this subrogation claim, and Auchan joined in the suit seeking recovery of its uninsured losses. Because the interests of Travelers and Auchan are the same for the purposes of this appeal, we refer to them jointly as Auchan. Auchan also sued General Electric Company (GE), the manufacturer of the failed transformer, for breach of warranty.

Auchan asserted in the trial court that HL & P was negligent, grossly negligent, that the clause in HL & P's tariff that purports to limit its liability was unreasonable as applied to Auchan's loss, and that the tariff was a product of disparate bargaining power. HL & P moved for summary judgment, arguing that its tariff was on file with and approved by the Public Utility Commission of Texas (PUC or the Commission) and that the tariff was not unreasonable. HL & P contended that its tariff should be given full effect to limit liability to the cost of necessary repairs of physical damage to electrical facilities caused by the service interruption.

HL & P's tariff provides, in part:

Company [HL & P] will make reasonable provisions to supply steady and

continuous electric service, but does not guarantee the electric service against fluctuations or interruptions. Company will not be liable for any damages, whether direct or consequential, including, without limitation, loss of profits, loss of revenue, or loss of production capacity, occasioned by fluctuations or interruptions unless it be shown that Company has not made reasonable provisions to supply steady and continuous electric service, consistent with the Customer's class of service, *and in the event of a failure to make such reasonable provisions (whether as a result of negligence or otherwise), Company's liability shall be limited to the cost of necessary repairs of physical damage proximately caused by the service failure* to those electrical facilities of Customer which were then equipped with the protective safeguards recommended or required by the then current edition of the National Electrical Code.

(emphasis added). This same language was incorporated in the service contract between Auchan and HL & P.

The trial court granted partial summary judgment for HL & P on Auchan's negligence claim. Auchan then nonsuited all its other claims against HL & P and its claim against GE, thereby making the partial summary judgment final. On appeal, the court of appeals concluded that Auchan had raised a fact question by presenting summary judgment evidence that its damages substantially exceeded the compensation available under HL & P's tariff and that HL & P unreasonably delayed in repairing the outage. Accordingly, the court of appeals reversed the trial court's judgment and remanded the case for further proceedings. 961 S.W.2d at 203.

We granted HL & P's petition for review to consider the effect of its PUC-approved tariff provision.

## II

Although the effect of a utility's tariff that purports to limit liability is a question of first impression for this Court, the issue has been considered by many other courts, including the United States Supreme Court. Before the turn of the century, the Supreme Court had occasion to pass upon the validity of a rate charged by a telegraph company that limited its liability for erroneously transmitted messages. *See Primrose v. Western Union Telegraph Co.,* 154 U.S. 1, 14 S.Ct. 1098, 38 L.Ed. 883 (1894). In *Primrose,* the rate was not approved by any regulatory authority. But the Supreme Court held that the limitation should be given effect, if there were no willful misconduct or gross negligence, as a common-law, contractual limitation of liability. *See generally id.*

Subsequently, in *Western Union Telegraph Co. v. Esteve Bros. & Co.,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921), the same class of rate charged by the same telegraph company was again under consideration, but by this time, the rates charged had been subjected to regulation by federal statutes. *Id.* at 570, 41 S.Ct. 584. The Supreme Court recognized that the limitation of liability was part of the telegraph company's filed rate. The Court held that because the Act to Regulate Commerce prohibited undue preferences or advantages and required uniformity in rates, the telegraph company was precluded from compensating an injured customer for more than the filed tariff allowed. *See id.* at 571, 41 S.Ct. 584. The Supreme Court reasoned that the telegraph company "could no more depart from [the limitations of liability] than it could depart from the amount charged for the service rendered." *Id.* The Court recognized, however, that in other contexts and under other statutory schemes, such as those involving common carriers, particular attempts at limiting liability were unreasonable. *See id.* at 574, 41 S.Ct. 584 (citing *Union Pac. R.R. v. Burke,* 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656 (1921)).

In *Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1959), the Supreme Court refused to strike down summarily an exculpatory provision in a tariff

approved by the Interstate Commerce Commission (ICC) that relieved a towboat owner of liability for its own negligence in towing barges. *Id.* at 421, 79 S.Ct. 1210. The Court observed that because tariff provisions that limit liability are part and parcel of the rates charged, regulatory bodies may have a sound basis for approving an exculpatory clause:

For all we know, it may be that the rate specified in the relevant tariff is computed on the understanding that the exculpatory clause shall apply to relieve the towboat owner of the expense of insuring itself against liability from damage caused tows by the negligence of its servants, and is a reasonable rate so computed.

*Id.* at 417–18, 79 S.Ct. 1210.

In the case before us today, the rates charged by HL & P to Auchan and HL & P's conditions of service are regulated by the PUC. Under the Public Utilities Regulatory Act (PURA), the Legislature has conferred jurisdiction upon the PUC to regulate utility rates, operations, and services. *See* TEX. UTIL.CODE § 14.001. The PURA requires each utility to file a tariff with the PUC. *Id.* § 32.101. HL & P's tariff contains a schedule of its rates and the rules and regulations governing service.

Auchan does not challenge the PUC's authority to approve the provision that purports to limit HL & P's liability for damages. Nor does Auchan take issue with HL & P's position that the PUC validly approved the limits on the types of damages recoverable and that the tariff provision is not unreasonable on its face. Rather, Auchan argues only that when applied to any particular loss by a customer, the reasonableness of this provision should be determined on a case-by-case basis. Auchan contends that a fact question on reasonableness is presented if there is evidence (1) that a disparity exists between the amount of damages the customer sustained and the recovery allowed by the tariff, and (2) that the utility could have remedied the outage sooner than it did.

The court of appeals agreed with Auchan. *See* 961 S.W.2d at 202.

In rejecting HL & P's argument that its tariff was reasonable as a matter of law and validly limited the types of damages for which HL & P was liable to Auchan, the court of appeals relied on its earlier decisions in *Southwestern Bell Telephone Co. v. Reeves,* 578 S.W.2d 795 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), and *Calarco v. Southwestern Bell Telephone Co.,* 725 S.W.2d 304 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.). The court of appeals concluded in this case, as it had done in *Reeves* and *Calarco,* that a tariff is reviewable for reasonableness by a trier of fact. *See* 961 S.W.2d at 201. At least one other court of appeals has agreed that the reasonableness of a tariff is a fact question, but that court did not necessarily adopt the two-pronged test used by the court of appeals in this case. *See Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d 825, 829–30 (Tex.App.—Corpus Christi 1991, writ denied).

We agree with HL & P that the analysis employed in *Reeves* and *Calarco* and applied by the court of appeals in this case is inconsistent with the majority view throughout this country. Neither *Reeves* nor *Calarco* cited any precedent for their holdings. *Reeves* summarily concluded that the reasonableness of a tariff is a fact question. *See Reeves,* 578 S.W.2d at 798–99. *Calarco* followed *Reeves* without any further analysis, then cited two cases that had nothing to do with tariffs for the proposition that a jury trial on reasonableness was required. *See Calarco,* 725 S.W.2d at 306–07 (citing *Detro v. Gulf, Colorado & Santa Fe R.R.,* 188 S.W. 517, 518 (Tex.Civ. App.—Beaumont 1916, no writ); *Burnett v. Fort Worth Light & Power Co.,* 117 S.W. 175, 176 (Tex.Civ.App.1908, no writ)). We are unaware of any other jurisdiction that has adopted a rationale similar to that of *Reeves/Calarco* in determining the reasonableness of a tariff.

A number of courts that have considered the validity of tariff provisions that limit a

public utility's liability have enforced the tariffs as written. *See Los Angeles Cellular Tel. Co. v. Superior Court,* 65 Cal. App.4th 1013, 76 Cal.Rptr.2d 894, 897–98 (1998); *Woloshin v. Diamond State Tel. Co.,* 380 A.2d 982, 984–85 (Del.Ch.1977); *In re Illinois Bell Switching Station Litig.,* 161 Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440, 444–45 (1994); *Angelo Pavone Enters. v. South Cent. Bell Tel. Co.,* 459 So.2d 1223, 1226 (La.Ct.App.1984); *Wilkinson v. New England Tel. & Tel. Co.,* 327 Mass. 132, 97 N.E.2d 413, 416 (1951); *Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court,* 160 Mont. 443, 503 P.2d 526, 529 (1972); *Allen v. General Tel. Co.,* 20 Wash.App. 144, 578 P.2d 1333, 1336–37 (1978).

Many jurisdictions require that a plaintiff show gross negligence or willful or wanton misconduct by the utility to recover damages beyond those provided in the tariff. *See Olson v. Mountain States Tel. & Tel. Co.,* 119 Ariz. 321, 580 P.2d 782, 784 (App.1978); *Shoemaker v. Mountain States Tel. & Tel. Co.,* 38 Colo.App. 321, 559 P.2d 721, 724 (1976); *Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.,* 130 Ga.App. 798, 204 S.E.2d 457, 460 (1974); *Burdick v. Southwestern Bell Tel. Co.,* 9 Kan.App.2d 182, 675 P.2d 922, 925 (1984); *Computer Tool & Eng'g, Inc. v. Northern States Power Co.,* 453 N.W.2d 569, 573 (Minn.Ct.App.1990); *Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 825 P.2d 588, 590 (1992); *Coachlight Las Cruces, Ltd. v. Mountain Bell Tel. Co.,* 99 N.M. 796, 664 P.2d 994, 1000 (App.1983); *Lee v. Consolidated Edison Co.,* 98 Misc.2d 304, 413 N.Y.S.2d 826, 828 (1978); *Garrison v. Pacific Northwest Bell,* 45 Or.App. 523, 608 P.2d 1206, 1211 (1980); *Behrend v. Bell Tel. Co.,* 242 Pa.Super. 47, 363 A.2d 1152, 1166 (1976), *vacated and remanded,* 473 Pa. 320, 374 A.2d 536 (1977), *aff'd on remand,* 257 Pa.Super. 35, 390 A.2d 233 (1978).

Only a few courts have held that tariff provisions purporting to exculpate a utility from its own negligence or that limit its liability for damages are unreasonable or invalid. *See McNally Pittsburg Mfg.*

*Corp. v. Western Union Tel. Co.,* 186 Kan. 709, 353 P.2d 199, 203–05 (1960) (holding that no Kansas statute gives the Commission authority to limit a utility's liability); *Forte Hotels, Inc. v. Kansas City Power & Light Co.,* 913 S.W.2d 803, 804–06 (Mo.Ct. App.1995) (applying Kansas law) (holding that the tariff's limitation of liability is unreasonable and unenforceable). *But see Burdick,* 675 P.2d at 925 (applying Kansas law and holding the tariff was reasonable). *See Southwestern Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n,* 67 N.M. 108, 353 P.2d 62, 68–71 (1960) (holding that a regulatory commission cannot absolve a utility of liability for negligence through its tariff because that would contravene public policy). *But see* N.M. Stat. Ann. § 41–4–8 (Michie 1978) (providing that a New Mexico public utility is immune under that state's Tort Claims Act from liability for damages caused by a failure to provide an adequate supply of gas, water, electricity, or other services). *Cf.* K.A. Drechsler, Annotation, *Validity of Contractual Provision by One Other Than Carrier or Employer for Exemption from Liability, or Indemnification, for Consequences of Own Negligence,* 175 A.L.R. 8, 39–40 (1948) (stating that public policy prohibits power companies from contracting against their liability for negligence).

For the reasons we consider below, we are persuaded by the weight of authority in other jurisdictions that HL & P's PUC-approved tariff limiting the types of damages for which it will be liable should be given effect and that Auchan's negligence claims for damages other than those provided by the tariff are foreclosed.

### III

There are a number of considerations that weigh in favor of giving effect to tariff provisions that limit the liability of a public utility. As HL & P points out, many of these considerations were identified by the PUC when it approved a tariff provision like the one at issue in this case. *See* Tex. Pub. Util. Comm'n, *Application of Central*

*Power and Light Company for Approval of Tariff Amendment,* Docket No. 3198, 7 Tex. P.U.C. Bull. 53 (June 22, 1981) (final order granting application) [hereinafter *CP & L*].

The proceedings in *CP & L* received considerable attention from the public utility industry because it was the PUC's bellweather decision as to whether it would authorize tariff provisions that limited liability for damages. *See id.* at 54 (indicating that eleven motions to intervene were filed in the case). The Commission concluded that such provisions were not unreasonable as a general proposition because they resulted in lower utility rates, fair and reasonable treatment of all classes of customers, and the protection of a utility from liability for catastrophic loss and potential financial distress. *See id.* at 59. The PUC also recognized in *CP & L* that customers, particularly large commercial customers, are in a better position to estimate their exposure to loss and to protect their own interests. *See id.* at 58. HL & P contends that, for the reasons articulated in *CP & L,* its tariff is reasonable as a matter of law when applied to the Auchan outage. We examine each of the considerations identified by the PUC in *CP & L* in turn.

In *CP & L,* the PUC determined that rates charged to consumers "could be affected by increasing the utility's exposure to claims of liability." *Id.* This reasoning can be traced to the United States Supreme Court's decision in *Western Union Telegraph Co. v. Esteve Bros.,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921). In that case, Justice Brandeis explained, within the context of a tariff approved by the ICC, that a "limitation on liability was an inherent part of the rate." *Id.* at 571, 41 S.Ct. 584.

A number of state courts have also concluded that, absent a limitation of liability for ordinary negligence, utilities would be forced to raise rates charged to consumers. *See Cole v. Pacific Tel. & Tel. Co.,* 112 Cal.App.2d 416, 246 P.2d 686, 688 (1952); *Landrum v. Florida Power &* *Light Co.,* 505 So.2d 552, 554 (Fla.Dist.Ct. App.1987); *Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.,* 130 Ga.App. 798, 204 S.E.2d 457, 460 (1974); *In re Illinois Bell Switching Station Litig.,* 161 Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440, 446 (1994); *Singer Co. v. Baltimore Gas & Elec. Co.,* 79 Md.App. 461, 558 A.2d 419, 427 (1989); *Wilkinson v. New England Tel. & Tel. Co.,* 327 Mass. 132, 97 N.E.2d 413, 416 (1951); *Computer Tool & Eng'g, Inc. v. Northern States Power Co.,* 453 N.W.2d 569, 573 (Minn.Ct.App.1990); *Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court,* 160 Mont. 443, 503 P.2d 526, 528–29 (1972); *Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 825 P.2d 588, 590–91 (1992); *Coachlight Las Cruces, Ltd. v. Mountain Bell Tel. Co.,* 99 N.M. 796, 664 P.2d 994, 998–99 (App.1983); *Lee v. Consolidated Edison Co.,* 98 Misc.2d 304, 413 N.Y.S.2d 826, 828 (1978); *Behrend v. Bell Tel. Co.,* 242 Pa.Super. 47, 363 A.2d 1152, 1165 (1976), *vacated and remanded,* 473 Pa. 320, 374 A.2d 536 (1977), *aff'd on remand,* 257 Pa.Super. 35, 390 A.2d 233 (1978); *Allen v. General Tel. Co.,* 20 Wash.App. 144, 578 P.2d 1333, 1337 (1978).

In *CP & L,* the Commission also concluded that, absent a limitation of liability for consequential damages, "the bulk of such losses would be sustained by a small number of large industrial customers, and the absence of such a clause clearly would adversely affect the rates of all customers, large and small." *CP & L,* 7 Tex. P.U.C. Bull. at 59. This is a valid concern. Generally, the only electric utility customers who would suffer substantial economic damages would be commercial or industrial users. Losses paid to those commercial or industrial customers could be passed on to smaller customers, including residential users, in the form of higher rates. This consideration tends to support the conclusion that tariffs that limit economic damages are not unreasonable, even when the damages suffered are substantial.

The PUC also concluded in *CP & L* that the burden of estimating potential damages and of obtaining protection against losses caused by electrical outages should fall on the customer, not the utility. The PUC reasoned that an electric utility is unable to anticipate the "nature and size of the claims that can be incurred because of service interruptions" and that it is not feasible to require a utility "to protect itself against these potential losses which simply cannot be accurately ascertained." *Id.* at 58. Because customers of an electric utility are in a better position to ascertain their potential losses due to a power interruption, the Commission concluded that customers are better able to obtain insurance or otherwise protect themselves against such an event. *Id.* The customers' ability to obtain insurance in such situations has also been recognized by the United States Supreme Court. *See Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 418, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1959). In *Southwestern Sugar,* the Court held that a utility customer should not be entitled to benefit from a lower rate based on the utility's protection from liability and then be able to "repudiate the correlative obligation of procuring its own insurance" by suing the utility for damages. *Id.* Here again, the reasoning of the PUC and other courts is persuasive.

Furthermore, one need only consider a power outage in the commercial district of a major Texas city to realize the potential liability of an electric utility. As an example of such a scenario, the PUC specifically pointed to the experience of Consolidated Edison in the 1977 New York City blackout. *See CP & L,* 7 Tex. P.U.C. Bull. at 59. Absent a limitation of liability, the risk of staggering loss could be borne by ordinary utility customers.

Another factor supporting the reasonableness of a tariff provision that limits liability is that historically, public utilities have not operated in the same environment as unregulated businesses. While it is true that when Auchan's outage occurred, the Utility Code expressly recognized that the electric utility industry "is becoming a more competitive industry that does not lend itself to traditional electric utility regulatory rules, policies, and principles," Tex. Util.Code § 31.001(c), the PUC exercises considerable regulatory authority over public utilities in Texas. PURA provides that "[e]lectric utilities are by definition monopolies" and that "[p]ublic agencies regulate electric utility rates, operations, and services." *Id.* § 31.001(b). PURA prevents an electric utility whose rates are regulated from "charg[ing] or receiv[ing] a rate for utility service" except as provided by the PUC. *Id.* § 36.002. Under the law that has been in effect until recent legislation that does not become effective until September 1, 1999, the electric utility cannot receive any more or less for the electric service once a rate is set in a tariff. *See id.* § 36.004(a). *But see* Tex. S.B. 7, 76th Leg., R.S. § 39 (1999) (restructuring the electric utility industry so that prices for electric services are determined by the normal forces of competition).

An unregulated business can set its prices based on what the market will bear and can factor in potential or actual liability. When an electric utility's rate is set by the PUC, it cannot vary from that rate. And an electrical utility cannot pick and choose its customers on the basis of the potential liability that would be associated with a loss of power to a particular customer's business. *See* Tex. Util.Code § 36.003. It must provide service to all regardless of the potential liability that would be associated with a loss of power to a particular customer's business.

One court analyzed the interrelation of governmental regulation and limitations of liability as follows:

> The theory underlying these decisions is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state

control, "its liability is and should be defined and limited." There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the Commission are established with the rule of limitation in mind.

*Cole,* 246 P.2d at 688 (citation omitted). A number of other states have adopted *Cole*'s reasoning. *See In re Illinois Bell Switching Station Litig.,* 204 Ill.Dec. 216, 641 N.E.2d at 446 (quoting *Cole* ); *Bulbman,* 825 P.2d at 591 (quoting *Cole* ); *Behrend,* 363 A.2d at 1165–66 (observing that "because utilities are strictly regulated in rights and privileges, regulation of their liabilities to some extent is necessary to strike a balance of benefits and burdens").

In *CP & L,* the Commission also recognized that because a utility's rate of return is regulated by the State, investors are only willing to contribute capital "based on the assumption that [the utility] will not face the exposure that an unregulated utility may face." *CP & L,* 7 Tex. P.U.C. Bull. at 58. Generally, PURA only allows an electric utility "to earn a reasonable return on the utility's invested capital ... in excess of the utility's reasonable and necessary operating expenses." Tex. Util. Code § 36.051. The public interest in protecting the financial integrity of public utilities is another basis for concluding that tariff provisions such as the one at issue in this case are not unreasonable when applied to claims for ordinary negligence.

We are cognizant that the relationship among the PUC, utilities, and their customers will dramatically change over the next few years. In the 1999 legislative session, the Legislature passed Senate Bill 7, which restructures the electric utility industry and will in the future open Texas's retail electric markets to competition. *See* Tex. S.B. 7, 76th Leg., R.S. (1999). How that restructuring may impact future tariffs is, of course, not at issue in this case.

We conclude that tariffs such as the one at issue here are not unreasonable when they limit economic damages resulting from the utility's negligence. HL & P's PUC-approved tariff should be applied as written. We disapprove of *Reeves, Calarco,* and *Vollmer* to the extent that they conflict with our decision today. Finally, we note that Auchan abandoned its gross negligence claim in the trial court, and that claim is not before us. We express no opinion on whether a utility's tariff may limit its liability for gross negligence or willful misconduct.

\* \* \* \* \*

The trial court did not err in granting summary judgment for HL & P. Accordingly, we reverse the judgment of the court of appeals and render judgment for HL & P.