AUCHAN USA, INC., Successor in Interest to Texfield, Inc., d/b/a Auchan Hypermarket, Appellant,

v.

HOUSTON LIGHTING & POWER CO., Appellee.

No. 01–95–01030–CV.

Court of Appeals of Texas, Houston (1st Dist.)

Oct. 17, 1996.

Rehearing Overruled Sept. 23, 1997.

---

Larry L. Gollaher, J.E. Ted Turner, Dallas, for Appellant.

Bill Kroger, Houston, for Appellee.

Before MIRABAL, and HEDGES and PRICE,[1] JJ.

## OPINION

PRICE, Justice.

This is an appeal from a partial summary judgment granted in favor of appellee, Houston Lighting & Power Company (HL & P). Appellant, Auchan USA, Inc. (Auchan), appeals on the basis that there were genuine issues of material fact as to the reasonableness of the tariff's limitation of liability in its contract for electricity with HL & P. We reverse.

### Summary of Facts

This suit is a subrogation action brought by Travelers Insurance Company on behalf of its insured, Auchan, to recover amounts paid to Auchan for lost profits and spoilage due to a power outage. On June 14, 1992, the Auchan Hypermarket lost electrical power at approximately 5:20 p.m. due to the failure of the electrical transformer. HL & P was contacted at approximately 5:40 p.m. and sent crews to work on the transformer. The crews arrived at approximately 6:40 p.m. Power was out for approximately 14–15 hours. Due to the outage, Auchan lost frozen goods and other perishables.

HL & P is a publicly held utility and is regulated by the Texas Public Utility Commission (PUC). The PUC approves all rates,

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

rules, and regulations. These rates, rules, and regulations, including the terms and conditions for providing service, are called tariffs. HL & P maintains that its liability is limited by the tariff. The tariff in question provides:

Company will make reasonable provisions to supply steady and continuous electric service, but does not guarantee the electric service against fluctuations or interruptions. Company will not be liable for any damages, whether direct or consequential, including, without limitation, loss of profits, loss of revenue, or loss of production capacity, occasioned by fluctuations or interruptions unless it be shown that Company has not made reasonable provisions to supply steady and continuous electric service, consistent with the Customer's class of service, and in the event of a failure to make such reasonable provisions (whether as a result of negligence or otherwise), Company's liability shall be limited to the cost of necessary repairs of physical damage proximately caused by the service failure to those electrical facilities of Customer which were then equipped with the protective safeguards recommended or required by the then current edition of the National Electrical Code.

When HL & P refused to pay Auchan's damages beyond the cost of necessary repairs, Auchan filed its original petition alleging claims of negligence, gross negligence, and breach of contract to supply continuous power. HL & P answered with a general denial of the allegations, noting that Auchan's claim was subject to a valid limitation of liability contained in HL & P's tariff. Auchan amended its petition adding General Electric Company, the manufacturer of the transformer, as a defendant, claiming it breached its implied warranty of merchantability and the transformer was defective. The amended petition claimed negligence and gross negligence against HL & P and sought total damages of $276,170.33. Auchan supplemented its petition and added the following claims: (1) the limitation of liability clause in HL & P's tariff is an unreasonable limitation of liability, (2) the tariff and limita-

tion of liability are void on the basis that they are products of disparate bargaining, and (3) the written contract was not the controlling contract because the subject matter of the contract had changed.[2]

HL & P filed a motion for summary judgment on the basis that its tariff on file with the Texas Public Utility Commission limits HL & P's liability in the case of an outage to the cost of necessary repairs. Attached to the motion were interrogatories as to the time the outage occurred, the time the outage was reported to HL & P, and the time the power was restored. The deposition of David Loya, an employee of Auchan, was attached to show an estimate of the time to repair the transformer was given to Auchan in order for Auchan to take measures to protect the food. Also attached was the agreement between Auchan and HL & P for electrical service that included the tariff.

In Auchan's response to the motion for summary judgment, it argued that a fact issue existed as to the reasonableness of the limitation of liability clause. Attached to Auchan's response was a deposition by its employee David Loya as to the estimate of the time to repair the transformer and the actual time of repair. The deposition of Stephen Davis, an Auchan employee, included testimony as to the damages due to loss of merchandise, lost profits, and computer damage. The deposition of Roger Owens, an expert witness, was attached to show alternatives available to HL & P to restore power more quickly and the length of time to repair exceeded the original estimate given to Auchan. The affidavit and deposition of Susan Elgin, the current treasurer of Auchan USA, Inc., were attached to show the terms of the contract with HL & P were not subject to negotiation.

After a hearing, a partial summary judgment was granted for HL & P on the negligence claim. Auchan nonsuited General Electric on the breach of warranty claim, and Auchan also nonsuited its gross negligence claim against HL & P in order that the partial summary judgment would become final and appealable. In its sole point of error,

2. The third contention is not at issue on appeal.

Auchan contends the trial court erred in granting HL & P's motion for summary judgment because there were genuine issues of material fact. Specifically, Auchan argues a question of fact exists as to: (1) whether the tariff's limitation of liability clause is void because there was a disparity of bargaining power between the parties in negotiating the contract containing the tariff; (2) the reasonableness of application of the limitation of the tariff's liability clause in this case because an unreasonable length of time was required to make the repairs to restore electricity; and (3) the reasonableness of the limitation of liability clause in the tariff because there was a large amount of damages caused by the outage compared to the small amount of recovery allowed by the tariff.

### Standard of Review for Summary Judgment

■ In a summary judgment proceeding brought by a defendant, the movant-defendant must present summary judgment proof establishing, as a matter of law, that there is no genuine issue of material fact on one or more of the essential elements of the plaintiff's cause of action. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 774 (Tex.1995). The movant-defendant may accomplish this by offering summary judgment evidence showing that at least one element of nonmovant's cause of action has been established conclusively against the nonmovant. *Id.* at 774. It is not necessary for the movant-defendant to disprove all elements of the nonmovant's cause of action; rather, if a movant-defendant can disprove any one of the essential elements, then the court should render summary judgment for that movant-defendant. *Wheeler v. Yettie Kersting Memorial Hosp.*, 866 S.W.2d 32, 36 (Tex.App.—Houston [1st Dist.] 1993, no writ). If the movant-defendant negates one or more of the essential components of the nonmovant's causes of action, the burden is on the non-movant to produce controverting evidence raising a fact issue as to the elements negated. *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). On appeal, evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). We consider Auchan's point of error in light of this standard.

### Analysis

■ First, Auchan contends it raised a fact issue because a disparity of bargaining power existed between Auchan and HL & P regarding the contract for electricity, and this disparity renders the limitation of liability clause void as against public policy. Agreements exempting one party from future liability for negligence are generally upheld unless, due to the relationship of the parties, the limitation is contrary to public policy or the public interest. *Crowell v. Housing Auth.*, 495 S.W.2d 887, 889 (Tex. 1973).

Public utilities are by definition recognized as monopolies in the areas they serve. *See* Texas Public Utility Regulatory Act of 1995, TEX.REV.CIV.STAT.ANN. art. 1446c–0, § 1.002 (Vernon Supp.1996). However, these utilities are regulated by public agencies that serve as a substitute for competition by approving rates, operations, and services to consumers. *Id.* Contracts between HL & P and its customers are contracts of adhesion. HL & P is the only provider of electrical service in this area, and customers have no choice in accepting contracts with HL & P if they desire service. The Public Utility Commission (PUC) has approved these contracts including the limitation of liability clause and found they are not against public policy. *Application of Central Power & Light Company for Approval of Tariff Amendment*, Docket No. 3198, 1981 Tex. PUC LEXIS 247, *12–18 (June 22, 1981) (*CP & L Decision* ). The PUC has determined these limitations are necessary to protect customers from higher rates that would result from claims incurred due to large general outages. *Id.* at *14. The PUC acts as an intermediary between public utilities and public consumers balancing the interests of each. Even though consumers have no bargaining power in accepting the contracts, the utility companies have no right to refuse service to customers or to

bargain for conditions of service, as would any unregulated entity. *Id.* at \*13–14. Finally, customers are in a better position to evaluate potential losses and insure against them. *Id.* at \*14. Because these limitations of liability are not against public policy, we hold summary judgment was proper on this issue.[3]

■ Second, Auchan contends it offered proof that the tariff was unreasonable because the time to repair was unreasonable, and because the large amount of damages sustained were excessive compared to the small amount of recovery allowed in the tariff.

■ Unless found to be unreasonable, tariffs carry the dignity of statutory law. *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 829 (Tex.App.—Corpus Christi 1991, writ denied). As a general rule, a public utility's tariffs are presumed reasonable and necessary, but that determination is usually a question for the trier of fact. *Southwestern Bell Tel. Co. v. Reeves*, 578 S.W.2d 795, 798–99 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The Public Utility Commission, which approves the tariffs, states that the tariffs are "subject to review for reasonableness by the courts in actual damage or tort claims." *CP & L Decision* at \*10. Because a tariff is presumed reasonable, the burden to prove unreasonableness is on the customer. *Vollmer*, 805 S.W.2d at 829. A fact issue of reasonableness of a tariff can be raised by proof that 1) damages caused may be large as compared to the minute recovery allowed by the tariff, and 2) the company may allow the problem to persist for a long time even though it can solve it quickly. *Calarco v. Southwestern Bell Tel. Co.*, 725 S.W.2d 304, 306–07 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Reeves*, 578 S.W.2d at 799.

To support its motion for summary judgment, HL & P presented testimony as to the diligence of the crews sent to work on the outage. David Loya, an Auchan employee, testified that the crew was working hard and

doing everything they could to restore power. He also testified that HL & P's response time was good, there were unusual adverse working conditions, and the task of restoring power was of great magnitude. Further, HL & P relies on *Federated Dep't Stores v. HL & P* to support its proposition that the reasonableness of the tariff's limitations of liability provisions is not a question of fact, and therefore summary judgment was proper. 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ). In that case, a large department store sought to recover $31,562.00 in lost profits caused by an electrical interruption that lasted for several hours on two separate days. *Id.* at 510. The HL & P tariff with Federated provided that HL & P would make "reasonable provisions to supply steady and continuous electric service" without guaranteeing the electric service against "fluctuations or interruptions." *Id.* The tariff also provided that HL & P's liability was limited to "the cost of necessary repairs of physical damage proximately caused by the service failure.…" *Id.* The trial court upheld the validity of this provision and granted summary judgment in favor of HL & P. This Court affirmed the summary judgment. *Id.* at 511–12.

HL & P's reliance on this case is misleading. This case does not stand for the proposition, as HL & P would contend, that the reasonableness of the tariff is a question of law and can never be a fact issue. The issue addressed in *Federated* was whether there was unequal bargaining power between Federated and HL & P such that the limitation of liability provision in the tariff was void as against public policy. *Federated*, 646 S.W.2d at 511–12. This Court upheld the summary judgment specifically "because the appellant [Federated] presented no evidence to raise a fact issue regarding unequal bargaining position." *Id.* at 511. This case suggests that had Federated presented competent summary judgment evidence, summary judgment would not have been proper because a fact issue existed.

3. We note that at oral argument appellant's counsel stated appellant was abandoning the "disparity of bargaining power" argument, ac-

knowledging that the parties could not agree to anything contrary to the tariffs.

In this case, the parties abandoned the "unequal bargaining power" argument. Instead, Auchan argues that a fact issue exists as to the reasonableness of the tariff because HL & P allowed the problem to persist a long time even though it could have solved it quickly, and because their damages were large as compared to the recovery allowed by the tariff. To that extent, we cannot follow the *Federated* case, and we must review the evidence Auchan put forth to defeat summary judgment.

To defeat summary judgment, Auchan can create a fact issue of reasonableness of a tariff by proof that damages caused may be large as compared to the minute recovery allowed by the tariff, *and* the company may allow the problem to persist for a long time even though it can solve it quickly. *Calarco,* 725 S.W.2d at 306–07; *Reeves,* 578 S.W.2d at 799.

As evidence to support unreasonableness of time to restore power, Auchan relies on the deposition of Roger Owens, an expert witness.

Question: Do you think that the crews should have just kept that transformer in place and started up power right away?

Answer: I can't comment on that. I don't know the level of expertise of the crews. I think that they should have been on line quicker than 15 hours, even if they had to use jumpers to get them back up. And they didn't make any attempt to do that.

Question: What are jumpers?

Answer: Jumpers? Instead of while they were manufacturing all of their secondary bus-work to tie in, why didn't they use pigtails off the secondary of the transformer to get them back up for a short period of time? They didn't do that. It would have been easy to do. The rest of the world would do that.

Question: Now, I know it took some time for the crew to get out there. But if it took, say, from the time they got to the Auchan facility, to the time the work was completed, if it took, say, ten hours to do all that work, would you—are you going to testify that that's an unreasonable period of time to complete all that work?

Answer: I'm going to testify that the transformer went down and HL & P told them they were going to get it back up in a hurry, seven or eight hours or whatever it was; and it took them twice that. Quite possibly some of this stuff that got ruined wouldn't have gotten ruined if they had known right up front it was going to take 15 to 20 hours to do. And the people on-site, looking at the scope of the work, should have been the ones that were most able to make that correct estimate.

Question: All right. Is it your opinion, then, that HL & P should have been more accurate in its estimate or that the crews took too long to do all that work?

Answer: I think it's kind of a combination of the two.

. . . .

Answer: You go from the secondary of the new transformer. One of the problems was they had to manufacture a hard bus, copper bus, to tie into the bus for Auchan on the high current side of the transformer. What I'm saying is while they're manufacturing all that bus-work, you run jumpers from your secondary, bolt it right into the existing bus.... It's a temporary hookup so they can get power while you're manufacturing the new tie-ins. That's all it is. It's like using an extension cord while you're building a building.

HL & P did not offer any summary judgment evidence as to why it did not use jumpers or pigtails to temporarily restore power while it was working. We hold this deposition is sufficient evidence to create a question of fact as to the reasonableness of the time to restore power.

▮ Auchan also contends it raised a fact issue as to the reasonableness of the tariff limitation because it offered proof that the damages substantially exceeded the amount of recovery allowed in the tariff. A fact issue is created as to the reasonableness of a tariff limitation when proof is offered that the damages substantially exceed the tariff limitation. *Vollmer,* 805 S.W.2d at 829; *Calarco,* 725 S.W.2d at 306–07. Auchan has presented evidence as to the large amount of damages in the deposition of Stephen E. Davis.

Davis testified that the loss of merchandise, lost profits, and disposal costs exceeded $270,000. None of these expenses would be recoverable under the limitation of liability. Auchan has presented sufficient evidence to call into question the reasonableness of the tariff. Applying the standard for summary judgment review, we find a question of fact is raised as to the reasonableness of the tariff.

Because Auchan presented sufficient summary judgment evidence to raise a fact issue as to whether the tariff was reasonable, we hold the trial court erred in granting summary judgment in favor of HL & P. We sustain Auchan's sole point of error.

We reverse the judgment of the trial court and remand the case to the trial court.

HEDGES, J., dissents.

HEDGES, Justice, dissenting.

I respectfully dissent. I believe that the majority has used the wrong standard by which to determine the liability of Houston Lighting & Power ("HL & P"). I believe that a showing of ordinary negligence should be insufficient to avoid limitation of liability under a tariff regulating a public utility. I would hold that a higher degree of negligence is necessary to impose liability on a tariff-protected industry.

As a general rule, public utility tariffs carry the dignity of statutory law and are presumed reasonable, but that determination is usually a question for the trier of fact. *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 829 (Tex.App.—Corpus Christi 1991, writ denied). The PUC has provided that a tariff is "subject to review for reasonableness by the courts ..." *Application of Central Power & Light Company for Approval of Tariff Amendment*, Docket No. 3198, Tex. PUC LEXIS 247 (June 22, 1981) (*CP & L* Decision). Courts have held that if a customer can show that the application of a tariff's limitation of liability would be unreasonable, the customer can avoid its consequences and recover damages beyond what the tariff provides. The reasonableness of the application of a tariff's limitation of liability is assessed based on (1) whether damages caused are large compared to the minute recovery allowed by the tariff; and (2) whether the utility has allowed the problem to persist for a long time even though it could have solved it quickly. *See Calarco v. Southwestern Bell Tel. Co.*, 725 S.W.2d 304, 306–07 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Southwestern Bell Tel. Co. v. Reeves*, 578 S.W.2d 795, 798–99 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). In *Reeves* and *Calarco*, the tariffs provide that the customer can recover limited damages even if the utility is not negligent. *Calarco*, 725 S.W.2d at 306; *Reeves*, 578 S.W.2d at 799.

Our tariff provides:

*Company [HL & P] will make reasonable provisions to supply steady and continuous electric service,* but does not guarantee the electric service against fluctuations or interruptions. *Company will not be liable for any damages, whether direct or consequential, including, without limitation, loss of profits, loss of revenue, or loss of production capacity, occasioned by fluctuations or interruptions unless it be shown that Company has not made reasonable provisions to supply steady and continuous electric service, consistent with the Customer's class of service, and in the event of a failure to make such reasonable provisions (whether as a result of negligence or otherwise), Company's liability shall be limited to the cost of necessary repairs of physical damage proximately caused by the service failure to those electrical facilities of Customer* which were then equipped with the protective safeguards recommended or required by the then current edition of the National Electric Code.

While I recognize the *Reeves* factors as the factors we must look to in order to decide the issue of reasonableness of application, I part company with the majority on the nature of conduct required to impose liability for lack of reasonableness.

It is clear from the language of our tariff that it limits recovery for all claims except those involving conduct more egregious than mere negligence. In contrast to *Reeves* and *Calarco*, our tariff permits a customer a limited recovery only if HL & P is negligent.

If we say that a customer can challenge the reasonableness of this tariff based on a showing of negligence, the logical conclusion is that we are denying HL & P any relief from liability; only in the absence of negligence would the tariff's limitation apply. But in the absence of negligence, why would the limitation of liability clause be necessary? To my mind, the majority opinion has decimated the whole purpose of this tariff's limitation provision.

Public policy strongly supports limitation of liability for public utilities. In the *CP & L* decision, three important justifications for limitation of liability clauses in the tariffs of regulated utilities are set forth: (1) unlimited liability could materially affect CP & L's financial status; (2) unlimited liability could ultimately affect the perception of the company's risk by investors; (3) unlimited liability would ultimately result in higher rates within the general rate structure. *Id.* at *15–17. The hearing examiner reasoned, "the primary justification for this [limitation clause] is the sheer size of the potential liability CP & L could be subjected to if it were liable for property loss in a general outage.... The bulk of such losses would be sustained by a small number of large industrial customers, and the absence of such a clause clearly would adversely affect the rates of all customers, large and small." *Id.* at *8.

How do I square my interpretation with the language in *Reeves* and *Calarco?* In order to understand my distinction, it is necessary to differentiate between a challenge to the reasonableness of the application of a tariff and a challenge to the reasonableness of the tariff itself. Although cases speak in terms of the "reasonableness of a tariff," *Reeves*, 578 S.W.2d at 799, a careful reading of their facts reveals that the common issue is not the reasonableness of the tariff as it applies to every customer, but **the reasonableness of the tariff as applied to the particular plaintiff.** In fact, the first prong of the Reeves test, "that damages caused may be large as compared to the minute recovery allowed by the tariff", 578 S.W.2d at 798, explicitly supports my conclusion. This inquiry clearly relates to the damages caused to *the particular plaintiff* in the case.

In no case has a court invalidated a tariff because it was unreasonable on its face;[1] rather, the inquiry has been the reasonableness of an individual application under discrete circumstances. When analyzed under this construct, I believe that *Reeves* and *Calarco* can be reconciled with our case. In each, the investigation must be the reasonableness of the application of the specific tariff under the case's unique facts.[2]

In our case, we must decide what the standard of "reasonableness" is under the tariff before we assess the propriety of its application. I believe that the tariff's limitation of liability provision compels that the customer show conduct beyond mere negligence, specifically gross negligence or intentional wrongful conduct, before raising a fact issue about the reasonableness of application of the limitation provision. In our case, Auchan neither alleged nor sought to prove gross negligence or intentional wrongful conduct in its response to HL & P's motion for summary judgment. At the most, Auchan demonstrated negligence on HL & P's part. Therefore, I would hold that Auchan did not meet its burden in raising a fact issue in the summary judgment proceeding.

I would affirm the trial court's summary judgment order.

---

1.  If the reasonableness of the tariff as applied to all customers were the issue before us, I would find that the tariff was reasonable based on the reasoning set forth in the *CP & L* decision. Furthermore, the Public Utilities Commission, whose jurisdiction includes approval of specific tariffs, has approved this one.

2.  Auchan clearly argues that the **application** of HL & P's tariff is unreasonable in the context of this dispute in that: there existed a disparate bargaining process between Auchan's predecessor and HL & P; an unreasonable length of time was required to make the necessary repairs to restore electrical service; and Auchan's damages are large compared to the recovery which the limited liability provision of the tariff provides.